IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

v.                              CRIMINAL CASE NO. 4:25-cr-181-DMB-JMV

MARTAVIS MOORE aka "MOLLY"

## **UNITED STATES OF AMERICA'S MOTION FOR PROTECTIVE ORDER**

The United States of America, by Clay Joyner, United States Attorney for the Northern District of Mississippi, and through Robert Mims, Assistant United States Attorney, moves this Court for a Protective Order pursuant to Federal Rule of Criminal Procedure 16(d)(1).

Specifically, the government proposes that any discovery materials (or copies thereof) provided by the government to the defense (regardless of when such materials were produced):

(a) will not be copied, except to the extent needed as trial exhibits or as counsel's working copies;

(b) will not be shared outside of the defendant's counsel's office, or the correctional facility library if a defendant's bond were revoked prior to trial, with any person not employed by defendant's counsel;

(c) will not be provided to, or kept by, a defendant, except that defendant's counsel may take the materials to a defendant and show them to a defendant;

(d) will not be discussed or shared between defendants in this matter or the related matters listed herein, or between a defendant and others involved in the offenses in the Indictment;

(e) that the defendants, defendants' counsel, and any agent thereof, be prohibited from disseminating any of these materials or disclosing any information contained therein to anyone other than to this Court, to his or her client in this case, or witnesses and individuals necessary to the preparation of a defense with which Defense Counsel deems necessary to discuss Discoverable Material except that defense counsel may discuss the materials with other defense counsel in this case; and

(f) any attorney of record who is retained or appointed to represent a defendant or who is later relieved of representation of a defendant is bound by the terms of this Order unless excused from its terms by Court Order.

The related matters to which this Order would apply are:

      U.S. v. Jamario Sanford and Marvin Flowers, Criminal Case No. 4:25-cr-182;

      U.S. v. Martavis Moore, Criminal Case No. 4:25-cr-181;

      U.S. v. Chaka Gaines, Criminal Case No. 4:25-cr-180;

      U.S. v. Marquivious Bankhead, Criminal Case No. 4:25-cr-178;

      U.S. v. Brandon Addison, et al., Criminal Case No. 4:25-cr-177;

      U.S. v. Dequarian Smith, Criminal Case No. 4:25-cr-183.

The government has conferred with counsel for all defendants in this matter. The motion and order are unopposed.

## STATE OF DISCOVERY

Discovery in this case is voluminous and contains protected information. Discovery consists of evidence and reports generated over a multi-year period, including hundreds if not thousands of hours of audio and/or video recordings and statements from cooperators. The quantity of materials to be included in the government's initial production is expected to exceed multiple gigabytes of data.

Much of this material includes information about cooperating witnesses, undercover recordings, and other sensitive material. The massive volume of discovery, which includes hundreds of pages of reports, makes effective and timely redaction virtually impossible.

This FBI-led investigation resulted in the arrests of 20 individuals, at least some of whom have connections to violent street gangs and other known criminals. Local confidential informants were key to the investigation and participated in undercover operations against the defendants. Their identity will be readily known to the defendants despite any efforts the government might make to protect the identity of the informants. The government knows of at least one instance prior to the arrest of the defendants where one defendant approached one of the informants and stated that he had heard that the informant was a government snitch. While no direct threat was made on that date, the possibility that threats or retribution against informants may occur, from

either a defendant or simply from other criminals living in the community, is of significant concern to the government.

## ARGUMENT

Considering the above facts, the proposed Protective Order, applying to the government's discovery as well as to any sealed court filings (which are also likely to contain sensitive information), is warranted. The proposed order would abate the risk of inappropriate disclosure, facilitate timely and comprehensive discovery disclosures, reduce the risk of pretrial discovery litigation, and avoid any prejudice to the legitimate interests of the defendants or their counsel.

Protective orders in federal criminal cases are authorized by Federal Rule of Criminal Procedure 16(d)(1), which states: "At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Courts have wide latitude under the Rule to impose appropriate restrictions on the use and disclosure of discovery materials. *See, e.g.*, 2 Charles Alan Wright, Fed. Prac. & Proc. Crim. § 262 (4th ed.) ("The discretion provided to the trial court by Rule 16(d)(1) is vast.") (citing *United States v. Campa*, 529 F.3d 980, 995 (11th Cir. 2008)). Given such discretion, "the trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect." *Alderman v. United States*, 394 U.S. 165, 185 (1969).

The expeditious production of discovery materials is another common justification for a protective order. Particularly in large cases such as this one—with discovery documents numbering in the thousands—the timely transmittal of discovery is necessary to ensure defense counsel has time to review discovery and the case proceeds on schedule. *See United States v. Johnson*, 314 F. Supp. 3d 248, 252 (D.D.C. 2018); *United States v. Bulger*, 283 F.R.D. 46, 52 n.11 (D. Mass. 2012) ("Blanket protective orders expedite the flow of discovery and avoid the time

3

consuming, inefficient process of a document by document review." (internal quotation marks omitted)). The terms of the Protective Order would help to minimize any prejudice to the defendants from the massive volume of discovery, as it would enable the government to provide most discovery materials to defense counsel early in the case while still permitting defendants to view the materials in the presence of their lawyers.

In light of these concerns, the proposed Protective Order is squarely in line with the relief granted in similar cases. First, the type of order requested—i.e., an "umbrella" or "blanket" order, applying to the government's discovery as a whole—is commonly granted and justified by the facts of this case. *See Bulger*, 283 F.R.D. at 52 & n.11. Given the quantity of discovery materials, it would be unduly burdensome for the government to attempt to segregate those materials that require protection from those that might not. An umbrella order has the added advantage of ensuring smooth and expeditious disclosure of discovery materials and helps avoid the possibility of pretrial litigation over which documents are subject to the Protective Order. *See In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987) (recognizing that blanket protective orders are "designed to encourage and simplify the exchanging of large numbers of documents, volumes of records and extensive files without concern of improper disclosure"); *Smith*, 985 F. Supp. 2d at 545 (noting that blanket protective orders can be "useful and expeditious in large scale litigation").

Second, the proposed condition that the defendants (or any other individuals other than defense counsel and members of the defense legal team) may not retain copies of the discovery is also appropriate. In the communities in which the defendants and the informants reside, gangs and violent crime are rampant. The criminal community often threatens and carries out acts of violence against those believed to be informants. There is a serious concern about the safety of the informants in this matter if their names were disclosed to the community at large, especially

4

if the information was corroborated by discovery material. A prohibition on the defendants (or any other individuals outside of the defense legal teams) from keeping copies of discovery is therefore necessary to prevent the dissemination of sensitive discovery materials. *See, e.g.*, *United States v. Padilla-Galarza*, 990 F.3d 60, 77 (1st Cir. 2021) (upholding a "protective order barring defense counsel from leaving copies of the cooperators' statements" with the defendant); *United States v. Cecchetelli*, 1:19-cr-10459, 2020 WL 4736495 (D. Mass. Aug. 14, 2020) (approving a protective order, applying to approximately 92% of discovery materials, that "bar[s] incarcerated defendants from printing, copying, maintaining, or disseminating" protected discovery and "prevents any Defense Team member from providing Protected Material to any defendant, including released defendants, and any unindicted co-conspirator or agent.").

## CONCLUSION

For the foregoing reasons, the United States requests that the Court enter the proposed Protective Order applying to all defendants in this case.

Respectfully submitted,

CLAY JOYNER
United States Attorney

*/s/ Robert J. Mims*
ROBERT J. MIMS
Mississippi Bar No. 9913
Assistant United States Attorney
U.S. Department of Justice
900 Jefferson Avenue
Oxford, MS 38655
(662) 234-3351
robert.mims@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2025, I electronically filed the **UNITED STATES OF AMERICA'S MOTION FOR A PROTECTIVE ORDER** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

> CLAY JOYNER
> United States Attorney
>
> */s/ Robert J. Mims*
> ROBERT J. MIMS
> Mississippi Bar No. 9913
> Assistant United States Attorney
> U.S. Department of Justice
> 900 Jefferson Avenue
> Oxford, MS 38655
> (662) 234-3351
> robert.mims@usdoj.gov